Thank you, Your Honor. Paul Bell for Plaintiff Appellant Ronald Bias. U.S. Marine Corps Lieutenant Colonel Ronald Bias was on active duty at Ammead High School in Louisiana as a JROTC instructor. While there, he discovered fraud by the principal and a co-instructor. As a result of that, those two retaliated against Bias and intentionally caused his transfer by the Marine Corps, thereby ruining his chances for promotion. Bias was employed in a dual employment relationship. That is, is that he was an employee of the Marine Corps, and he was also a agent and a contractor to the school. I mean, he was employed to the Marine Corps and an agent or contractor to the school board. Counsel, isn't that an unusual arrangement? My understanding, the stakes made on Officer Bias's initial retirement is what created this unusual arrangement with the Tangipahoa School District. Call back to active duty is signed. Neither of you have talked particularly about the regulations governing JROTC and the relationships that those regulations may create, but my understanding is usually this is not an active duty service member, and the relationship is more employer-employee. Can you address that at all? Is this a unique situation in Tangipahoa, and understanding the relationship he had with the school district is really sui generis? As far as I know, it is a unique situation. There may be one or two others like that, but generally, right. The person, the instructor is a retired Marine. And he was on active duty? He was on active duty. The salary was, the Marines paid him the salary? Retaliation was the Marine transferred him, and also there was some acts by those two individuals against him while at work, making it a very hostile environment. Now, let me ask you this. Is there any summer judgment evidence about how this affected his career? I mean, I know he says that it affected it to the extent that it caused him to retire. What's the summer judgment evidence of the effect of leaving Tangipahoa and going to New Orleans, and how that would have caused him to retire? It's true some discovery was conducted in this case. However, let me remind the Court that we're here on a motion to dismiss. We're here on the facts of the complaint. The issue before the Court is, is that in this kind of dual employment relationship, can a company that is employing a whistleblower and retaliating against that whistleblower escape liability by simply getting his other employing entity of that whistleblower to do the record, pages 537 and 592. It states, for example, a case where it quoted the Court to state that only the employing entity that does the adverse act can be liable. It states that even if the Marine Corps relied on the school board for that transfer, Marine Corps can only be responsible. It also stated that the causal chain connecting the school board to the Marine Corps is severed when the Marine Corps relied on that school board. I'd like to review that decision in four ways. One, legislative intent, the language of that statute, false claims act retaliation cases, and a little bit of employment law to see if there is maybe a different kind of causation analysis in employment law than there would be in criminal law or tort law. As far as legislative intent is concerned, the False Claims Act was enacted 123 years ago, and then in 1986, or I mean more than that, back in Civil War, and 123 years later, it was modified. A remedial statute was added to that to protect some of those people who are reporting the fraud against the government. The Congress wanted to protect the whistleblowers. In 2009, another revision was made to that retaliation statute, and that was to address the issue of protection under the act, and they were added to that retaliation provision as a result. Would you agree on your argument that Bias needed to be a contractor or agent of Tangipahoa? Yeah, I consider that him a contractor, and sometimes he's an agent of the school board. Where was there a contract between Tangipahoa and him? Wasn't the contract an arrangement really with the Marines? Well, I consider he had really two people he reported to. One was a supervisor, the principal, and the other was the Marine Corps. When he was doing acts that were more that of the Marine Corps— Well, but I'm talking about contract. What you're saying is no doubt relevant, but let's say, how does this make him a contractor, what you're talking about, this arrangement that the Marines had with Tangipahoa, placing him there under this unusual situation? He was doing some acts that were benefiting the Marine Corps for which the school board really didn't have any supervision over, perhaps training manuals that he would use or his type of instruction on Marine actions, okay? In that respect, he could only have been a contractor to the school board. He didn't have a contract, though. But he did not have a contract. And how about agent? You got an argument for how he might have been an agent. In the complaint, I state that he was a contractor agent. I state that the principal supervised him and made evaluations of him. Bias supervised an employee of that school. Bias did lunch detention duty. Bias was in virtually the same position he was in before. All of those things, I contend, show that he was an agent of the school board. Well, looking at this as a motion to dismiss, does your complaint set out—I actual relationship was that he was on active duty with Marines at the time? Is that in your complaint? That he was on active duty in the Marines? Yes, that's in the complaint. All right. Thank you. As a remedial statute, courts should look at that in terms of any ambiguity, any absurdity in interpreting it, to interpret it in favor of the whistleblower. As far as the language, there's one sentence in regards to the retaliation provision of that. That—let me just state it. Any employee, contractor, or agent shall be entitled to all relief necessary to make the employee, contractor, or agent whole if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in terms of conditions of employment because of lawful acts done by the employee, contractor, or agent or associated others in furtherance of an action under, end quote, the False Claims Act. Note in this act, it's passive voice. Where is the defendant in this act? It's interesting because before this, before 2009, it did state after that list of adverse acts, demotion, discharge. It's stated by the whistleblower's employer. 2009 to remove it. Now, the lower court cited Howell v. Town and Ball for the proposition that, as that court—Howell stated it and some perhaps jokingly of the plaintiff—the plaintiff was arguing that anyone and everyone can be sued under this act because of that language change. Courts since 2009, however, have taken—the consensus is that that omission is really one in which it's only stating that you've got to be an employing entity to be a defendant under this act. Okay? The lower court relied on Howell. Howell essentially did two steps. One, you've got to be an employing entity to be a defendant. Two, you had to also have done the adverse act. However, there isn't any employing entity at issue in Howell's case. Howell wanted to sue his supervisor. Okay? Bias versus school board case, we're talking about suing an entity, a school board. So in that respect, it is not on point. Another is that the courts, in order to come to this consensus, had to read into that statute that there is a defendant and describe that defendant. They read into it that he's got to be an employing entity. To read into that act even more goes against the remedial statute and the interpretation requirements that it should be read in favor of the whistleblower. Because certainly in the case before us here, to read it otherwise would be a way in order to have a retaliator evade liability. Do we have any authority out there that says one employer can be held liable for influencing another employer? What we have here is you have the school district and the Marines. The Marines made the decision to transfer him, and he's alleging it was not the Marines that he's suing, but it's the other employer. The school district influenced the Marines. Three cases. In every one of these cases, the court comes back and says, despite the fact that the defendant did not do the adverse act, we're finding that defendant liable. Okay? Or at least able to proceed to trial. And that is Aiello and Nguyen. There the whistleblower blew the whistle on these defrauding companies. The whistleblowers left that employment. Those, that defrauding company influenced the following company that that whistleblower got a job with, and he lost a job with that following company. Court found liability with that ex-employer. Similarly in Ortino versus School Board. Ortino whistleblew on the School Board, and the School Board thereupon blackballed him. He could not get another job after that. So despite the fact that School Board really didn't do any of the adverse act, still liability was found. Now let me go to the last point here, and that is, is that when the School Board said that, wow, the causation is severed should the Marine Corps rely on the School Board, I thought, whew, that's violation common principles and tort and criminal law. However, that's kind of a cheap shot because employment law is a statutory background as opposed to the more common law background of tort and criminal law. So one really has to look at The answer is no. In Starr versus Proctor Hospital, the U.S. Supreme Court stated in somewhat similar situation, but not identical, that when a duping subordinate supervisor dupes his boss into firing an individual, there's still liability with the company. Now how do they discuss, how do they go about causation analysis? Proximate cause analysis, the court says. Okay, Powell's Graff versus Long Island Railroad, the Supreme Court states. So there is no special kind of proximate cause, special kind of analysis that would prevent a court from finding liability in this case. The Fifth Circuit has gone and taken that stomp and applied it to Zamora. And the Fifth Circuit stated, well, in Zamora things are a little different here. Okay. Because in Zamora, it's Title VII retaliation, but it's not Staub, which was usuric employment law, completely different. Fifth Circuit comes back and said, we'll use Staub, but it's not to use the but-for analysis causation of Title VII retaliation. I propose that the same kind of analysis be done here. And that is because the False Claims Act Retaliation Statute has that same kind of language as does Title VII retaliation, that you find liability when the retaliator is doing it because of the protected conduct of that whistleblower. So the same kind of approach that was used in Zamora should be used for this case. So in conclusion, one looks at the congressional intention, the language of the statute, False Claims Act case law, and even employment law. One cannot find how you cannot find liability for a company that is intentionally causing another company to do the adverse act against that whistleblower. Thank you. Do you think that would apply to anybody? I mean, let's say a student had complained to the Marine Corps that this guy was mistreating him or something. Remember, the False Claims Act Retaliation Statute is a rather circumscribed statute. You see what I'm saying. I mean, who does the act apply to? Just anybody that causes some kind of adverse action? It has to apply to a fellow who has told his employer that this company is committing fraud. Okay, so that's a prerequisite that is going to prevent an awful lot of folks. Say a student complained and a student discovered something and complained to the Marine Corps. If a student discovered fraud against a company and that company retaliated against him, he would be, well, I don't think a student is a employee. A student is not an employee. I guess you allege that the school board, through the principal, controlled Bias enough so that we consider him some sort of an employer, huh? He was a contractor agent. He was an agent to the principal school board and he was a contractor to the school board. Okay. Thank you very much. Thank you. Ms. Boudreaux. May it please the Court, Danielle Boudreaux on behalf of the Appellees, Tangipahoa Parish School Board, Principal Michael Stant and Carl Foster. Today I would like to address three topics with you. One of those being, I would like to touch on a few of the critical facts and let you know why I think that those are. We're dealing with 12B6 here, right? Correct. All their facts are what's alleged in the complaint, is that right? Right. And I want to bring up a few of them and the reasons why I think that I want to make sure that these are focused upon. And then to focus on what I think is the reality of this case and a very important policy argument. And then briefly address the three elements of a prima facie case of a whistleblower retaliation. Before I dive into those, however, I do want to answer directly some of your questions that possibly opposing counsel didn't answer specifically. As far as, is this an unusual relationship? Absolutely. In fact, it's part of my policy argument in that these ROTC instructors are always, in fact, I have not come across a situation where an ROTC instructor is an active duty Marine. The regulations for not just Marines, Navy, seem to be that they're not on active duty. They're not. They're employees of the school district. They are. They're retired and they are employees of the school district. And that is how we find ourselves in this really unfortunate situation. I think the whistleblower act might still apply. I know you have three things you want to cover. I'm going to sidetrack you just a bit, maybe. What do you say the relationship under the False Claim Act was? Employee, contractor, or agent? None. He is definitely not an employee. Well, employee, it seems to me some of the case law takes that fairly expansively. There are no definitions, is that correct, in the False Claims Act for these words? Correct. Well, he certainly was working on behalf of students at the Tangipahoa School District. He did have a contract, military contract, now with Tangipahoa. But I think those three words are saying what is the relationship with the malfactor, with the defendant? And it has to be one of those three relationships. Wasn't he at least the agent of Tangipahoa working through the Marines in educating the Marines? One of the Marines' concerns, I'm sure with this, is to keep a good relationship with Tangipahoa. They want to be able to have this program there. And it seems to me that he was the agent for the school district as well as the employee of the Marines to make that program work and allow those kids to be educated and directed in whatever way JROTC works. Why isn't that an agency? The problem with this situation is that he's an active duty Marine. He, just like anybody else, could be called, could be moved, transferred anywhere. The only reason they allowed him to stay in that position. In fact, there are grumbles around the fact that he was allowed to be an ROTC instructor on active duty while everybody else is actually somewhere else on active duty. So the fact that he was permitted to stay there to be an instructor while he wasn't on active duty, it was really a very unique situation. We have to figure out what that unique situation was and why isn't it a possibility to consider him the agent of the school district and working with those kids? He wasn't independent the overall management of the school. Well, he reported to the military. When he had a complaint, he went directly to his, up the military chain of command. One of the issues here is how much of this is in the complaint? How much can we tell from the complaint? This much. And that's the thing is that all of his complaints and everything he complained about went up his military chain of command. And specifically with respect to notice, and I guess that is one of the most important points here is that there is zero, not one allegation against the Tangipahoa Parish School Board. Not one. Nothing of wrongdoing and nothing, not even an allegation of vicarious liability in the complaint. None. They're just named. And obviously that these individuals were their employees, but there's not an allegation that they're vicariously liable for them. Are you separating Tangipahoa out and saying perhaps that at least the judgment is correct as to them? I'm just saying that it's not even alleged in the complaint. And so he, as far as whether or not dismissal for failure to state a claim of whistleblower retaliation against these defendants under the False Claims Act, is that correct? It is correct, especially on de novo review, regardless of the reasoning, whether it was articulated well or whatever by the district court judge. What is in the record and what is in the complaint can be observed by this court and can be dismissed for those reasons. We have a suit against the principal also, don't we? We do. Yes, sir. He did make allegations against the principal and some other employee. Who's the other teacher? Another, an actual retired ROTC instructor. Okay. All right. So who does he allege committed the false claim? The ROTC instructor and the principal. And what he says, and this is, he says that those two individuals somehow forced the Marine Corps to transfer him. Now, mind you, he has not even alleged how that is an adverse employment, a transfer by the Marine Corps of an active duty Marine. In fact, I have in a Rule 28J letter cited a case for you, a Fifth Circuit case, that a regular transfer, especially by the military, is not considered a sanction. It's not a punishment. It's not an employment. Is that a false claim to that case? It is not. The False Claim Act says discharge demoted, Mr. Bell said suspended, I didn't have that written down, threatened, harassed, or in any other matter discriminated against. And again, on the pleadings, alleging that this, taking him out of Tangipahoa, saying his next duty station is not going to be there anymore, it's going to be in New Orleans, and that was, for whatever reason, unacceptable to him, was at least a negative action towards them. And we're just looking at the pleadings right now, and it seems to me some of what you're talking about would be better made at a judgment stage. What we're looking at, did he make a complaint, a sufficient complaint, that because of the actions of these teachers, and whatever the role of the school district may be is a separate issue, but these named individuals had informed the Marines of their displeasure, and it's based on them retaliating against him for his whistleblowing, and caused him to be sent to an unacceptable location by the Marines, so he quit. That's the nature of a complaint, and looking at the general language of the False Claim Act, it's at least a start, and I need to hear from you why it doesn't finish the job, and not just some sort of policy arguments. I mean, you're doing more than that. I'm not criticizing you. I need to go further. Well, I think that, and I think to fall back on what the district court ruled, is that there is a causation, there, not only has he not sufficiently alleged causation, he cannot allege that those complaints were the but-for causation of the Marine Corps' discretionary actions to transfer an active-duty Marine. Maybe he can't prove it, but he's alleged it, has he not? What about, has he, if he were to have, the Marine Corps could have transferred him to Hammond High School, down the street, there's, would that be retaliation or adverse action? How does that, what is, what makes it, what makes this transfer an adverse action? Well, on the basis of the that it was adverse against him, to be, and so part of this is a matter of pleadings, are you saying the factual basis of why it was adverse is a fatal absence from his complaint? It's one of them. I think that, I think that causation is a problem, that two individuals, that a teacher and a principal do not have the requisite, in fact, using his cat's paw theory, do not have the requisite leverage or influence over United States Marine Corps personnel to influence their decision to transfer him specifically to New Orleans, to where it would be unfavorable to him, which is what his allegation is, is that, because I think that his allegation is that it's because it was to New Orleans, it's because it was somewhere he didn't want to go, is why it was, it was unfavorable. I don't think we would be here if it was, if he was transferred to Hammond. It's because he didn't want to go to New Orleans, and so it's not possible that these two individuals had the leverage, and these are in, in the cases that he's cited also for the, for the cat's paw theory, as well as the ones I've cited, the leverage or the influence over the United States Marine Corps, because we're not talking, the superintendent, the school board did not call, there's no allegations of that, in fact, it's admitted that they were not involved, they had no knowledge of any of this, that a school teacher and a principal influenced the United States Marine Corps to issue transfer orders to this individual to send him so far away that he would be forced into retirement. I will accept what you've said so far as the answer to my question. You're, you can move on to some other parts. Okay. I do have a very important policy argument in this respect, in that I represent school boards, and this issue with the Marine Corps and the relationship with the school boards is very important. I had a school board meeting, they brought up the engaging into a new relationship with the, with the military for an ROTC program. It kind of made my skin crawl, because if the end result of this case is that the school board, the taxpayers of Tangipahoa Parish are ultimately responsible for the actions of the Marine Corps in transferring this active duty Marine, even if it was upon, even if it was upon the suggestion of a teacher, that's a really big chance that I'm not sure I want to suggest my clients get into. Mr. Bias has made allegations that money was improperly used by individuals at the school district, and he reported that to the military, called their hand on it. That's a pretty important policy consideration as well. So I think the policies cut a variety of ways in this case. I mean, False Claims Act case, misuse of federal money, it is what it is. So what legal arguments do you have? Well, in the pleadings, in the complaint, is that this entire case, entire case, the false claim is based off of a field trip for 12 students to Eglin Air Force Base in Florida for three days. The false claim part is about a disagreement between Mr. Bias and Mr. Foster, over five students. Mr. Foster says he was recruiting them to the Marine Corps. Mr. Bias says they were not in the Marine, in the ROTC program. Therefore, the Marine Corps program, the ROTC program shouldn't pay for them. Again, part of a policy argument, this seems to be way out of the realm or intention of the False Claims Act for this public school system to be into three years of federal litigation over whether, this is less than $2,500 is what has gotten us here today, over five, whether five students' field trip to an Air Force Base in Florida should have been paid for by the ROTC program. And Mr. Bias's allegations in his complaint, he's alleged multiple times, he says that there were three false claims. Two of those involve activity account funds. That is local school funds, fundraiser funds. That is not the false claims. That is not federal funds. So, look, you're getting into facts that are not in the complaint. That isn't, these are in, this is in the complaint. I mean, the field trip to Florida. All of this. Disagreement about. All of it. This is all in the complaint. Well, it's not described as a disagreement between the principal and, but between the teacher and the instructor. You need to stick to the complaint. The complaint says that not all of the students were in the ROTC program. And that's what it is. That they weren't all in the program. So, that was what the false claim part was. That it shouldn't have been paid, the trip shouldn't have been paid for all of them. You can't resolve that here. Whether they were or weren't. No, and that's not the issue. That's the extent of what this all comes from. That's my point. And so, really, what I'm getting at is that, at the, if you read through the complaint, what you will see is that the core of this, and you will read this through, through and through, especially in the Robertson decision, that the whistleblower, this is the protection for, the concern for protecting the use, the illegal activity or fraudulent activity against the government. The concern for that. If you will read through the complaint, you will see that the concern is more against power or the struggle between who was the boss, who was the, who had more power, who had, at this school, who was the higher military rank at Tangipoa High School? Who was, who was tattling on whom? This was the main concern. The main concern in a false claim, retaliation claim, for blowing the whistle should be about, it is, according to jurisprudence, the, is concerns of fraud upon the government are attempting to expose illegality of fraud within the meaning, within the meaning of the False Claims Act. In this case, he complained that some of the money that was supposed to go just for the junior ROTC program was not being spent for the ROTC program, and the Marine Corps ended up not approving some of those expenses. Is that not the situation? So isn't that a misspending of government funds that he brought to the attention of the Marine Corps, that the school was improperly spending money given to the school specifically for the junior ROTC program? It wasn't, it's not money given to the school. It was, it would have been reimbursed. It never, there never was any funds given for this trip. No funds were ever paid. But there was an attempt to try to correct. There was a request for reimbursement. And then every, every other complaint, everything, every other 100 plus allegation is about, nobody came to me, nobody asked me, nobody followed the rules. And then everything else about concession stands or activity accounts. So it's not fraud under the False Claims Act. It's just weren't following policies and procedures. And I think my time is up. Thank you. Thank you. Back to you, Mr. Bill. Mr. Bill, you did not discuss the statute of limitations decision dealing with 1983 and the state law claims. Is that out of the case? Do you agree that that issue is resolved properly, that the statute of limitations does bar the 1983 in state law claims? No, it has not, Your Honor. I know it's in your brief, and you can't cover anything in argument. I want to make sure you're still taking that position here. I'm not asking you to explore it with us. I'm just asking you a functional question of whether it's in the case in your mind. Yes, I'm still stating that no affirmative defense of statute of limitations was done by the defendants, verified those that those claims have not prescribed. You fully briefed that. I'm not asking you to. Pardon? You said you've already fully briefed that. You don't need to discuss that further. Okay. Thank you. In regards to any facts and issue over this case, this is a 12B6 motion before the court, and believe me, we want to go back to court. We want to discuss this issue. Bias is here. He wants to go at it, okay? So we're ready to discuss those where it's appropriate, and that is in the lower court on remand. In regards to the issue of whether the implausibility of the Marine Corps of deciding to transfer bias on the recommendation of the school board, in Zamora, the Fifth Circuit stated how in these kind of duping cases, they're especially important where it's likely they would occur, and it's quite enjoyable that here we have a case in which these kind of duping situations are more likely to occur, even in the Staub case. Staub and Zamora was intra-company catspaw, okay? Bias versus school board is inter-company. You have one duper in another company. I contend that this kind of catspaw analysis is more important here, okay? That's because in these kind of cases, you have not a subordinate and a boss. You got officials that are somewhat equal. They're different companies. Also, you have in these kind of situations, oftentimes, an employer, just like the Marine Corps, staffs, puts its employee at a worksite. Well, who supervises that worksite employee? Well, the duper does. So, of course, that one who's duping would have more influence because he is there with that worksite employee day in, day out. I'm not sure I can use the dupe word the way that you have, so let me not try to do it. Is it fair to say that you have not made any allegations against the school board as, I'm going to try anyway, either as a duper or something else? Aren't they properly dismissed from this case? And in your case, really just against the two individuals? Against the two individuals, yes. As regards to the school board, no. What have you alleged against the school board? What I alleged against the school board is that through their agents, liability can be Have you alleged any knowledge by school board members, any role in the actual action? Did the principal work through the school board in giving notice to the Marines? Just what have you alleged that would tie factually, allegation-wise, factually the school board to what happened? Well, principally, I'm relying on the fact that, quote, supervisor in employment law is liable. The company can be liable for the actions of a supervisor. And so, certainly, the principal would be considered to be a supervisor. Similarly, the instructor was acting with the apparent authority of the school board, and it, too, would be considered supervisor in underemployment law, considered to be liable, the company would be liable for it. In regards to the other, certainly the school board was well aware of all that was going on. When Bias reported his, the fraud, there was many communications between his supervising officer and the school board. This occurred over months of time. So I don't recall exactly the complaint paragraphs, but the school board was well aware of what was going on. All right. I have no further comments. Thank you. Okay. Thank you. Thank you, guys. And we will take a brief recess before we take up the next case.